[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 351.]

BELLEMAR PARTS INDUSTRIES, INC., APPELLEE AND CROSS-APPELLANT, *v.*

TRACY, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *Bellemar Parts Industries, Inc. v. Tracy*, 2000-Ohio-343.]

*Taxation—Sales tax—Purchase of temporary employment services not excepted from sales tax under the resale exception set forth in R.C. 5739.01(E)(1) or manufacturing exception contained in R.C. 5739.01(E)(9).*

1.      Where a consumer contracts for temporary employees to add to its work force, the benefit of that service is the labor of the employees, not the product of their work.  Because it is the consumer of the services, not its customer, that receives the benefit of the service, the benefit is not resold in the same form and the resale exception from the sales tax does not apply.

2.      The manufacturing exception under R.C. 5739.01(E)(9) does not exclude the purchase of employment services from sales tax.

(No. 98-2516—Submitted December 15, 1999—Decided April 12, 2000.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 97-K-136.

————————————

{¶ 1} Bellemar Parts Industries, Inc. ("BPI") seeks a sales/use tax refund on its purchase in July 1994 of temporary employment services. At that time, BPI operated a wheel manufacturing and assembly line.  In connection with that operation, BPI purchased automobile tires, wheel balance weights, valve stems, rim covers, and steel and aluminum rims from suppliers for use in its production of completed wheel assemblies. BPI then sold these completed wheel assemblies to automobile manufacturers.

{¶ 2} To assist with its production, BPI contracted with Adia Temporary Services and Interim Personnel for temporary employees who would help perform

the wheel assembly services. These employees carried out the assembly services at BPI's facility under BPI's direct supervision. BPI then sold the completed wheel assemblies to its customers. The parties agree that the temporary employee arrangement between BPI and Adia and Interim constituted "employment service" as that term is defined in R.C. 5739.01(JJ) and used in R.C. 5739.01(B)(3)(k).

{¶ 3} After remitting tax on the purchase of the employment services, BPI filed an Application for Refund of Sales/Use Tax for the tax paid on these services, claiming exception from tax under both the resale exception in R.C. 5739.01(E)(1) and the manufacturing exception in R.C. 5739.01(E)(9) and 5739.011 (as applied to the use tax by R.C. 5741.02[C][2]). The Tax Commissioner denied BPI's refund application, holding that neither of the claimed exceptions applied. The Board of Tax Appeals ("BTA") reversed the commissioner's determination, concluding that the purchase of employment services to assemble wheels qualified for the resale exception. Having decided that issue, the BTA found it unnecessary to determine whether the manufacturing exception applied.

{¶ 4} This cause is now before the court upon an appeal and cross-appeal as of right.

_____

*Vorys, Sater, Seymour & Pease*, *L.L.P., Sandra J. Anderson, Raymond D. Anderson* and *Anthony L. Ehler*, for appellee and cross-appellant.

*Betty D. Montgomery,* Attorney General*,* and *Richard C. Farrin*, Assistant Attorney General*,* for appellant and cross-appellee.

*Vorys, Sater, Seymour & Pease, L.L.P.,* and *Gary J. Saalman*, urging affirmance for *amici curiae* National Association of Temporary and Staffing Services, Ohio Staffing Services Association, and National Technical Services Association.

*Baker & Hostetler, L.L.P., Edward J. Bernert* and *George H. Boerger,* urging affirmance for *amicus curiae* Ohio Manufacturers' Association.

_____

**COOK, J.**

**{¶ 5}** BPI's claim for a refund rests upon two sales tax exceptions: the resale exception set forth in R.C. 5739.01(E)(1) and the manufacturing exception contained in (E)(9) of that section. Because we conclude that neither exception applies to BPI's purchase of employment services, we reverse the decision of the BTA.

I

**{¶ 6}** BPI first argues that the purchase of employment services is excepted from sales tax under the resale exception. That exception, as set forth in R.C. 5739.01(E)(1), excludes from sales tax any transaction "in which the purpose of the consumer is (1) [t]o resell the thing transferred or benefit of the service provided, by a person engaging in business, in the form in which the same is, or is to be, received by him." See Sub.H.B. No. 715, 145 Ohio Laws, Part IV, 7387, in effect at that time. Thus, under the terms of that exception, BPI's purchase of employment service would be excluded from tax only if BPI's purpose, as consumer of the employment services, was to resell *the benefit* of the employment services to its customers *in the same form* as BPI received it.

**{¶ 7}** BPI argues that the terms of this exception are easily satisfied by the transaction at issue, contending that it resold to its customers the benefit of the employment services in the same form received. In so arguing, BPI describes the benefit it received and sold as the completed wheel assemblies produced by the temporary workers.

**{¶ 8}** The Tax Commissioner, however, reaches the opposite conclusion by characterizing the benefit of the service differently. Specifically, he describes the benefit received by BPI as a flexible, less costly, and more efficient work force. Construed in that manner, the benefit of the employment services was not sold in an unchanged form to BPI's customers. Rather, BPI received the benefit of those

3

services and combined it with BPI materials and the labor of permanent employees under BPI direction and control to create the item sold. Therefore, according to the Tax Commissioner, the resale exception does not apply to BPI's purchase of employment services.

**{¶ 9}** We are convinced that the Tax Commissioner has correctly identified the benefit of the employment services, and we therefore agree with his analysis. The benefit of the services of a temporary work force must include and focus upon its most obvious benefit—that provided by the labor itself. The actual benefit BPI realized from these employees was their contribution of temporary, flexible, and less costly labor to its work force. As explained by *amici curiae* for BPI: "Companies choose temporary labor because it affords them labor flexibility in periods of peak demand." Other reasons for temporary labor, as cited by the *amici,* include the desire to fill in for absent employees, to control headcount due to downsizing, to screen candidates for future employment, and to control benefit costs.[1] Reasons such as these delineate the actual "benefit" the employer receives from temporary employment services.

**{¶ 10}** Using this characterization of the benefit of employment services, it follows that BPI did not resell that benefit to its customers in the same form. Rather, BPI added the benefit to its operations to create the ultimate product. BPI provided the temporary workers with materials and a workplace, and supervised and directed them in their job responsibilities. This, combined with permanent employee labor, resulted in the finished product. The benefit, therefore, was received by BPI and was not resold in the same form. Accordingly, the resale exception does not apply.

**{¶ 11}** We disagree with BPI that our interpretation disregards clear legislative intent by focusing upon the "service" and failing to recognize the

---

1. A study conducted by Arthur Andersen, entitled "The Economic Impact of Extending State Sales and Use Taxes to the Temporary Help Supply Services Industry," categorized these types of reasons as the "benefits" of temporary employment.

"*benefit* of the service." Our holding today does define the term "benefit" differently than BPI advocates. But by so defining that term, we have not ignored its importance. In fact, we agree with BPI that the General Assembly included the term "benefit" to distinguish between the service purchased and the benefit received. It sought to clarify that if a service such as landscaping is purchased, the taxpayer need not resell landscaping services to meet the exception, but need only resell the benefit of those services, *i.e.*, cared-for grounds. But that distinction does not necessitate that the "benefit" of employment services be interpreted as the final product ultimately produced with temporary labor. Rather, our characterization of the actual benefit of employment services as the benefit inherent in the labor itself is fully consistent with the distinction created by the General Assembly.

{¶ 12} Nor does our holding today eliminate the resale exception's application to services. The exception remains applicable to all services where the necessary statutory conditions are met. Thus, where a taxpayer contracts with a company for a service and receives and resells the benefit of that service in the same form, the exception applies. Where, however, an employer contracts for temporary employees to come into its facility and provide labor under its direction and control, that "benefit" (the labor) is not resold to its customer in the same form (labor). An important distinction exists between the two, rendering one eligible for the exception and eliminating the other from the exception's scope.

{¶ 13} We also emphasize that today's holding leaves undisturbed our prior decisions in *Hyatt Corp. v. Limbach* (1994), 69 Ohio St.3d 537, 634 N.E.2d 995, and *CCH Computax, Inc. v. Tracy* (1993), 68 Ohio St.3d 86, 623 N.E.2d 1178. In *Hyatt*, the taxpayer purchased laundry services, received laundered linens as the benefit of those services, and resold them in that form to the customers. Likewise in *CCH*, the taxpayer purchased tax return preparation, received completed tax returns as the benefit, and resold the returns unchanged to its customers. The

5

transactions in both of those cases fit precisely the terms of the exception and continue to do so after today's decision.

{¶ 14} We conclude, therefore, that where a consumer contracts for temporary employees to add to its work force, the benefit of that service is the labor of the employees, not the product of their work. Because it is the consumer of the services, not its customer, that receives the benefit of the service, the benefit is not resold in the same form and the resale exception does not apply.

II

{¶ 15} We also reject BPI's argument that the purchase of temporary employment services is excepted from sales tax under R.C. 5739.01(E)(9). That section excludes from taxation those sales in which the purpose of the consumer is "[t]o use the *thing transferred*, as described in section 5739.011 of the Revised Code, primarily in a manufacturing operation to produce tangible personal property for sale." (Emphasis added.) Thus, in order for an employment service transaction to be excepted under this section, "thing transferred" would have to include employment services.

{¶ 16} To determine whether employment services constitute "things transferred," we will first consider the following definition of "thing" contained in R.C. 5739.01(E): "As used in division (E) of this section, 'thing' includes all transactions included in divisions (B)(3)(a), (b) and (e) of this section." Thus, the General Assembly specified that "thing" referred to only three service transactions of fifteen listed: repair services, installation services, and automatic data processing services. The General Assembly could have included employment service transactions in that definition, since employment services are one of the fifteen services contained in division (B)(3). Instead, it chose to include only those three specific service transactions. Accordingly, employment services are not "things" and therefore cannot be considered "things transferred" in the context of the manufacturing exception.

**{¶ 17}** This conclusion is supported by R.C. 5739.011, which provides guidance as to the full term "thing transferred" for purposes of the manufacturing exception. In division (B) of that section, the General Assembly created a list of items that are included as "things transferred." In division (C) it listed various items that are not "things transferred." Neither division (B) nor (C) discusses employment services. Rather, the only services included in the "things transferred" list in division (B) are repair and installation services in (B)(11), which is consistent with R.C. 5739.01(E)'s definition of the services constituting "things." A plain reading of these two statutes, therefore, compels the conclusion that the exception does not apply to employment services.

**{¶ 18}** In addition, we find BPI's interpretation of this statute unpersuasive. BPI contends that since R.C. 5739.011(C) contains those items that are not "things transferred" and division (B) sets forth a list of items that are only *examples* of "things transferred," it was the General Assembly's intent to exclude from taxation all items and services not specifically set forth in division (C). We reject the notion, however, that any item not contained in division (C) must be considered excluded from sales tax under the manufacturing exclusion. If, as BPI insists, that was the General Assembly's intent, it could have stated as much. But there is no indication in that section that all manufacturing transactions other than those in division (C) are exempt from sales tax. Without some expression of this intent by the General Assembly, we cannot justify rewriting the language of R.C. 5739.011 to conform to BPI's proposed interpretation.

**{¶ 19}** Because we see no support in the terms of the statute to include employment service transactions as "things transferred," we conclude that the manufacturing exception under R.C. 5739.01(E)(9) does not exclude the purchase of employment services from sales tax.

**{¶ 20}** The decision of the BTA is reversed.

*Decision reversed.*

MOYER, C.J., DOUGLAS and F.E. SWEENEY, JJ., concur.

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting and joining Pfeifer, J.'s dissent.**

{¶ 21} Contrary to the majority's holding, I believe that BPI's purchase of temporary employment services is excepted from the tax under the manufacturing exception set out in R.C. 5739.01(E)(9) and 5739.011.

{¶ 22} R.C. 5739.02 imposes a sales tax on transactions that fall within the statutory definition of a "retail sale." But retail sales do not include a thing transferred primarily for a manufacturing operation. R.C. 5739.01(E)(9). In order to determine whether Bellemar's purchase of the temporary employment services to manufacture the wheel assemblies for retail sale is excepted from tax under the manufacturing exception, it must be determined whether temporary employment services is a "thing transferred."

{¶ 23} R.C. 5739.01 states:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

" * * *

"(9) To *use* the *thing transferred*, as described in section 5739.011 of the Revised Code, primarily in a manufacturing operation to produce tangible personal property for sale[.]

" * * *

"As used in division (E) of this section 'thing' *includes* all transactions included in divisions (B)(3)(a) [repair services], (b) [installation services], and (e) [automatic data processing services] of this section." (Emphasis added.)

{¶ 24} This court has defined the word "including" as indicating merely an illustrative list, not an exhaustive one. *In re Hartman* (1983), 2 Ohio St.3d 154, 156, 2 OBR 699, 700, 443 N.E.2d 516, 517-518. Therefore, when the General

8

Assembly used the word "includes" in R.C. 5739.01(E) to refer to services in R.C. 5739.01(B), its intent was to list some, but not all, of the services that are to be considered a "thing." From an overall reading of the statute, I also believe that the General Assembly did not intend that temporary employment services used in the many processes be taxed. The services used to make the wheel assemblies in this case are merely a substitute for the work of regular employees. Therefore, I would find that temporary employment services should be included as "things" referred to by R.C. 5739.01(E).

{¶ 25} Bellemar used the temporary services to manufacture wheel assemblies that it sold to its customers. Consequently, pursuant to R.C. 5739.01(E)(9), Bellemar used the temporary employment services, the "thing transferred," primarily in a manufacturing operation to produce tangible personal property for sale. Thus, I believe that Bellemar's purchase of the temporary employment services is excepted from sales tax under the manufacturing exception. Therefore, I respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 26} I concur in Justice Stratton's dissenting opinion regarding the applicability to Bellemar of the manufacturing exception set forth in R.C. 5739.01(E)(9) and 5739.011. I further dissent because I agree with the Board of Tax Appeals that the resale exception contained in R.C. 5739.01(E)(1) applies to the temporary employment services at issue in this case.

{¶ 27} The resale tax exception excludes from sales tax or use tax any transaction "in which the purpose of the consumer is (1) [t]o resell the thing transferred or benefit of the service provided, by a person engaging in business, in the form in which the same is, or is to be, received by him." R.C. 5739.01(E)(1).

My disagreement with the majority is in regard to the characterization of the "benefit of the service."

{¶ 28} The only way to fairly characterize the benefit of service is to look to the finished product, *i.e.*, what the service yields. The work of the temporary employees in this case yielded wheel assemblies fit for sale. The benefit alluded to by the majority, a "flexible, less costly, and more efficient work force," is ephemeral at best. Bellemar is not hiring temporary employees to hang around and get paid less than full-time workers. They hire them to work. They do work. And the benefit of that work is a completed project, which is resold.

{¶ 29} This case is no different from *Hyatt Corp. v. Limbach* (1994), 69 Ohio St.3d 537, 634 N.E.2d 995. In *Hyatt*, at issue was the taxability of Hyatt's purchases of industrial cleaning services, through which its room and dining linens were cleaned. We held that Hyatt's purchase of those services fell under the resale exception, since Hyatt's guests "received the benefit of this service in being able to use clean linen." *Id*. at 540, 634 N.E.2d at 998. We saw the benefit of the service in *Hyatt* to be simply clean linen—we did not look to any side benefit that might inure to Hyatt. We did not cite the economic benefit of outsourcing laundry as opposed to having Hyatt employees do the work. The benefit of the service was the finished product—clean laundry. Likewise, the benefit in this case is completed wheel assemblies. Since Bellemar resells that benefit, the temporary employment services meet the sales tax exclusion in R.C. 5739.01(E)(1).

RESNICK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

———————————

10