[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 1.]

CORPORATE STAFFING RESOURCES, INC., APPELLANT, *v*. ZAINO, TAX COMMR., APPELLEE.

[Cite as *Corporate Staffing Resources, Inc. v. Zaino*, 2002-Ohio-1486.]

*Taxation—Use tax—Resale exception—R.C. 5739.01(E)(1) not applicable to company that uses technicians supplied by a temporary employment service to satisfy maintenance and repair contracts for products sold to its customers.*

(No. 00-2127—Submitted November 13, 2001—Decided April 3, 2002.)

APPEAL from the Board of Tax Appeals, No. 97-M-538.

————————

**COOK, J.**

{¶ 1} This appeal presents the question whether a company that uses technicians supplied by a temporary employment service to satisfy maintenance and repair contracts for products sold to its customers meets the R.C. 5739.01(E)(1) resale exception to the state use tax. Because we conclude that the company does not resell the benefit obtained from the temporary employment service in the same form in which it was received, we hold the resale exception inapplicable.

I

{¶ 2} Sarcom, Inc. is a computer hardware provider that, among other products, offers its customers a "full insurance plan" service agreement. Under this agreement, Sarcom contracts with its customers to provide all maintenance and repair service for specified computer hardware. Because Sarcom's need for technicians under this plan exceeded its own technical personnel, Sarcom supplemented its workforce during a portion of 1994 and the entirety of 1995 with computer technicians provided by Corporate Staffing Resources, Inc. ("CSR"), a temporary employment service.

**{¶ 3}** Under the arrangement between Sarcom and CSR, CSR would pay the technicians an hourly rate and Sarcom would in turn pay CSR a fee consisting of a percentage above that rate. The technicians would report each day to Sarcom, unless Sarcom had previously dispatched them to a worksite, where a Sarcom employee managed them. When computer hardware covered under the Sarcom plan needed on-site repair, Sarcom would then dispatch from its offices an appropriate technician.

**{¶ 4}** In 1996, CSR filed on Sarcom's behalf an application for a refund of use tax collected and remitted by CSR for its sale of employment services to Sarcom from October 1, 1994 to December 31, 1995. Among other grounds since abandoned on appeal to this court, CSR asserted a right to a refund because the services that Sarcom sold were in the same form as the services that CSR provided, thus falling within the resale exception set forth in R.C. 5739.01(E)(1).

**{¶ 5}** The Tax Commissioner denied the refund application, finding in part that Sarcom did not resell in the same form the benefit of the temporary employment services provided by CSR. CSR then appealed to the Board of Tax Appeals ("BTA"). Relying upon our decision in *Bellemar Parts Industries, Inc. v. Tracy* (2000), 88 Ohio St.3d 351, 725 N.E.2d 1132, the BTA affirmed the Tax Commissioner's denial of the refund. The cause is now before this court upon an appeal as of right.

II

**{¶ 6}** R.C. 5741.02(A) levies "an excise tax * * * on the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided."[1] Specific exceptions exist to this general rule

---

1. Both parties refer to the statutes involved, R.C. 5739.01 and 5741.02, without specifying which versions were in effect for the claimed refund period. Because there is no difference between the former versions of the relevant subsections involved and the current versions, we refer here to the statutes in their present forms. See 1995 Am.H.B. No. 61, 146 Ohio Laws, Part I, 383, 407 (effective October 25, 1995); 1994 Am.Sub.H.B. No. 632, 145 Ohio Laws, Part IV, 6568, 6572 (effective July

of taxation, such as that found in R.C. 5741.02(C)(2). That statute exempts from the use tax the acquisition of services that, "if made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code." R.C. 5739.01(E)(1) provides an exception to both R.C. 5739.02 sales taxation and R.C. 5741.02 use taxation by excluding from the definition of retail sales (and therefore from taxation) "all sales * * * in which the purpose of the consumer is * * * [t]o resell the thing transferred or benefit of the service provided, by a person engaging in business, in the form in which the same is, or is to be, received by the person."

{¶ 7} CSR contends that Sarcom qualifies for the exception because Sarcom's use of CSR technicians to satisfy its service plans constitutes the resale of the benefit, in the same form, that Sarcom receives from CSR. We disagree with this proposition.

{¶ 8} In *Bellemar*, we explained that "[t]he benefit of the services of a temporary work force must include and focus upon its most obvious benefit—that provided by the labor itself." *Id*. at 353, 725 N.E.2d at 1135. Thus, the actual benefit to a company using temporary employees is "their contribution of temporary, flexible, and less costly labor to its work force." *Id*. Other such benefits also exist, including screening candidates for future employment and controlling the costs of benefits. *Id*. Applying this "actual benefit" inquiry to the facts before us, we conclude that Sarcom did not resell the benefit of its transactions with CSR in the same form to its customers.

{¶ 9} The BTA found that during 1994 and 1995, Sarcom could not satisfy its service agreements without supplementing its technical personnel. By using CSR-provided technicians, Sarcom was able to achieve control over a sufficient number of technicians to meet its contractual obligations. Therefore, the *actual*

---

22, 1994); 1991 Am.Sub.H.B. No. 298, 144 Ohio Laws, Part III, 3987, 4460-4461 (effective August 1, 1991).

benefit to Sarcom was not the product of the workers' labor—consistently operating computer hardware—but a temporary and flexible work force of sufficient size and expertise. Further, although the hourly cost of CSR technicians exceeded the hourly wage of Sarcom technicians, Sarcom did not provide benefits for the temporary workers. And the Sarcom employee who managed the CSR technicians testified before the BTA that, after a certain period of time, he had hired CSR technicians on as Sarcom technicians—thus realizing the screening benefit.

{¶ 10} These benefits contrast with the benefit that Sarcom provided to its customers. The Sarcom employee responsible for negotiating the sale of service plans with Sarcom customers testified before the BTA that "[w]e were selling a service to our customers that basically were [*sic*] telling them we would keep their computers up and running." This offered benefit—functioning hardware— matched what the Sarcom employee described as the customers' desired benefit: "What the customers were negotiating for in the proposal period were the services to keep their computer up and running." The benefit to Sarcom's customers, then, was not the *labor* of CSR technicians, but the end *product* of that labor: consistently operating computers. Sarcom's customers purchased a service to ensure a result, not the addition of service personnel to their own work forces. To say that the actual benefit to Sarcom's customers was the CSR *technicians* would be to ignore that no customer would purchase a service plan simply to employ technicians. Rather, the customers purchased the service plans to realize the benefit of *having functioning hardware*, with the technicians being a means to an end.

{¶ 11} CSR argues that our decision in *Bellemar* is distinguishable. In *Bellemar*, a company obtained workers from a temporary employment service to work at the company's place of operations. The company then sold the tangible results of that work—wheel assemblies—to its customers. *Bellemar*, 88 Ohio St.3d at 351, 725 N.E.2d at 1133. CSR argues that here, however, "the CSR technicians performed their duties at Sarcom's customers' locations upon equipment owned by

the customers." Therefore, CSR reasons, "[i]t logically follows that Sarcom's benefit—deployed technicians to perform repair services under the customers' supervision—was the same benefit received by its customers, the ultimate consumers." CSR thus urges us to conclude that "Sarcom and its customers were joint beneficiaries of the deployment of CSR technicians to customer sites. The same benefit was received at the same location and at the same time by both Sarcom and its customers."

{¶ 12} CSR's reasoning is flawed. While the proper focus of our inquiry should encompass all material factors, which could include the site at which the various actors realize their benefit, the geographic location of the realization of the benefit is not dispositive. Such a narrow focus fails to account for the fact that Sarcom and its customers have different interests and ultimately realize *different*, although related, benefits—regardless of where the laborers perform their work.

{¶ 13} Our prior cases involving the resale exception provide examples of the proper analytical framework. We described these cases in *Bellemar*:

"In *Hyatt* [*Corp. v. Limbach* (1994), 69 Ohio St.3d 537, 634 N.E.2d 995], the taxpayer purchased laundry services, received laundered linens as the benefit of those services, and resold them in that form to the customers. Likewise in *CCH* [*Computax, Inc. v. Tracy* (1993), 68 Ohio St.3d 86, 623 N.E.2d 1178], the taxpayer purchased tax return preparation, received completed tax returns as the benefit, and resold the returns unchanged to its customers." *Bellemar*, 88 Ohio St.3d at 354, 725 N.E.2d at 1135-1136.

{¶ 14} In both cases, the benefit received at each step in the transactional chain was the same. The resale exception therefore applied. These cases contrast with the facts of *Bellemar*, in which the benefit to the taxpaying company—or the manufacturer's receipt of a supplemented work force—did not match the benefit to its customer—or wheel assemblies, the product of the supplemented work force's labor. There, because the character of the actual benefit realized by each party did

not remain consistent throughout the transactional chain, the resale exception did not apply. In each of the three cases, the proper inquiry is a focus on the actual benefit received and not on the service purchased.

{¶ 15} CSR's dual-benefit/site-focused approach thus fails to comport with our analysis in *Bellemar* and related cases, which follows the plain language of R.C. 5739.01(E)(1). We therefore reaffirm our prior holding that "[w]here a consumer contracts for temporary employees to add to its workforce, the benefit of that service is the labor of the employees, not the product of their work. Because it is the consumer of the services, not its customer, that receives the benefit of the service, the benefit is not resold in the same form and the resale exception from the sales tax does not apply." *Bellemar*, 88 Ohio St.3d 351, 725 N.E.2d 1132, paragraph one of the syllabus. Accordingly, we hold that Sarcom did not resell in the same form the actual benefit it realized from its transactions with CSR to those customers who had purchased the service agreement.

### III

{¶ 16} For the foregoing reasons, we conclude that CSR failed to prove that Sarcom satisfied the requirements of the resale exception. We therefore affirm the decision of the BTA.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

—————————————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 17} The majority holds that Sarcom's use of technicians supplied by Corporate Staffing Resources Inc. ("CSR") to satisfy maintenance and repair contracts was not subject to the resale exception in R.C. 5739.01(E)(1) and thus was subject to use tax. I disagree.

{¶ 18} As the majority recognizes, Ohio law imposes a use tax on a "benefit realized in this state of any service provided," R.C. 5741.02(A), but exempts services that would not qualify as a sale in Ohio as defined in R.C. 5739.01 to 5739.31 of the Revised Code. R.C. 5741.02(C)(2).

{¶ 19} A "sale" includes "[a]ll transactions by which * * * [e]mployment service is or is to be provided." R.C. 5739.01(B)(3)(k). " 'Employment service' means providing or supplying personnel, on a temporary or long-term basis, to perform work or labor under the supervision or control of another, when the personnel so supplied receive their wages, salary, or other compensation from the provider of the service." R.C. 5739.01(JJ).

{¶ 20} *R.C. 5739.01(E) defines the resale exception. It excludes from the definition of a sale sales in which the purpose of the purchaser is to resell the benefit of a service in the same form in which it was received. R.C. 5739.01(E)(1).*

{¶ 21} The majority dismisses CSR's contention that Sarcom resold the benefit of the CSR technicians in the same form that it received the benefit from CSR, based primarily on two conclusions. First, the majority finds that the actual benefit of CSR technicians that Sarcom received was "a temporary and flexible work force of sufficient size and expertise." Second, the majority finds that the benefit of the CSR technicians to Sarcom's customers "was not the *labor* of CSR technicians, but the end *product* of that labor: consistently operating computers." (Emphasis *sic*.)

### A. No Actual Benefit to Sarcom

**{¶ 22}** The resale exception, R.C. 5739.01(E)(1), reads:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the *purpose* of the consumer is*:*

"(1) To *resell* the * * * *benefit* of the *service* provided * * * *in the form in which the same is * * * received* by the person." (Emphasis added.)

**{¶ 23}** *"Purpose"* means "something that one sets before himself as an object to be attained: an end or aim to be kept in view in any plan, measure, exertion, or operation." Webster's Third New International Dictionary (1986) 1847. I believe that evidence before the BTA indicated that the *purpose* of Sarcom's purchase of the temporary use of the CSR technicians was to resell the benefit of the technicians' labor to Sarcom's customers.

**{¶ 24}** The decision to acquire technicians from CSR was made out of necessity. Because of its success in selling computer hardware, the demand for Sarcom's repair services also increased. Because of this increased demand for service and a tight labor market, Sarcom had to resort to filling its staffing needs through CSR, a temporary employment service. Despite this, Sarcom's service account manager testified that Sarcom preferred to use its in-house technicians for repair service. This position was reiterated by Sarcom's field service supervisor, who testified, "The advantage of using the Sarcom employee, they knew the Sarcom way." In fact, at least three of Sarcom's customers prohibited Sarcom from contracting out their repair services. Further, Sarcom paid a higher hourly rate for CSR technicians than for its own technicians. To quote from Justice Pfeifer's dissent in *Bellemar Parts Industries, Inc. v. Tracy* (2000), 88 Ohio St.3d 351, 357, 725 N.E.2d 1132, I would find that any benefit received by Sarcom from hiring the CSR technicians was "ephemeral at best."

B. The Benefit to Sarcom's Customers Was the Labor of the CSR Technicians

{¶ 25} I disagree with the majority's characterization of the benefit of the CSR technicians received by Sarcom's customers as "the end *product* of [the technicians'] labor: consistently operating computers." (Emphasis *sic*.) Sarcom purchased the service of temporary employees from CSR. The benefit of that service was the labor of the CSR technicians. Sarcom did not use the technicians' labor, but rather resold it to its customers to repair the customers' computers. Therefore, I believe that Sarcom resold the benefit of the CSR technicians in the same form in which Sarcom received it.

{¶ 26} Even accepting the majority's characterization of the benefit of the labor of CSR technicians to Sarcom's customers as "the end *product* of that labor: consistently operating computers," such a benefit is consistent with an example set out in *Bellemar* that defined a situation where the resale exception applied. In *Bellemar* the court recognized that its holding did not eliminate the resale exception where the benefit of a purchased service is sold. In characterizing the nature of the benefit that fit within the resale exception, the court in *Bellemar* gave the following example: "[I]f a service such as landscaping is purchased, the taxpayer need not resell landscaping services to meet the exception, but need only resell the benefit of those services, *i.e.,* cared-for grounds." *Id*., 88 Ohio St.3d at 354, 725 N.E.2d 1132.

{¶ 27} In this case, the majority holds that the benefit of the CSR technicians to Sarcom's customers "was not the *labor* of the CSR technicians, but the end *product* of that labor: consistently operating computers." (Emphasis *sic*.) I fail to see how that benefit differs from the cared-for grounds, which would also appear to be the end *product* of the landscaping services. Therefore, pursuant to the example in *Bellemar*, the benefit of the CSR technicians, even if characterized as the end *product* of their labor, should be subject to the resale exception.

C. The Majority's Holding Leads to an Unreasonable Result

{¶ 28} This court has a duty to construe legislation to avoid unreasonable results. *State ex rel. Commt. for the Referendum of Ordinance No. 3543-00 v. White* (2000), 90 Ohio St.3d 212, 218, 736 N.E.2d 873. As the dissenting member of the Board of Tax Appeals stated, "If Sarcom had sufficient personnel to provide the same service, no tax would have been levied." Sarcom hired the CSR technicians to do work that Sarcom employees would have done had Sarcom been able to foresee the demand for computer repair. Sarcom did not receive anything more from the CSR technicians than it would have from its own employees. Sarcom should not be penalized from a tax standpoint for being unable to foresee staffing needs.

{¶ 29} Further, I believe that the majority's holding results in double taxation. Not only was a use tax imposed on the labor of the CSR technicians, but Sarcom also collects a sales tax from customers for the repair services. Thus, the labor of the CSR technicians was taxed twice. Accordingly, I believe that the majority's holding leads to an unreasonable result.

D. Conclusion

{¶ 30} Because I believe that (1) Sarcom did not receive a benefit from its hiring of the CSR technicians and (2) Sarcom resold the benefit of the CSR technicians, *i.e.,* the technicians' labor, to its customers in the same form in which it was received, I believe that the resale exception set out in R.C. 5739.01(E)(1) applied. As a result, I do not believe that Sarcom should be taxed on its purchase of the labor of the CSR technicians. Accordingly, I dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

———————————

*Vorys, Sater, Seymour & Pease, L.L.P.*, *Anthony L. Ehler* and *Renee C. Khoury*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Robert C. Maier*, Assistant Attorney General, for appellee.

_____