NUSSEIBEH, APPELLANT, *v.* ZAINO, TAX COMMR., APPELLEE.

[Cite as *Nusseibeh v. Zaino,* 98 Ohio St.3d 292, 2003-Ohio-855.]

(No. 2002–0460—Submitted February 12, 2003—Decided March 12, 2003.)

**Per Curiam.**

{¶ 1} This case concerns a derivative sales tax assessment made against appellant, Raed Nusseibeh ("Nusseibeh"), as the president, sole officer, and sole shareholder of Nusseibeh, Inc.

{¶ 2} Nusseibeh formed Nusseibeh, Inc. in 1993 to purchase a grocery business known as Woodhill Shoprite. While Nusseibeh, Inc. operated the business, it obtained a vendor's license, had the liquor permit transferred to it, and became a licensed agent for Ohio lottery sales.

{¶ 3} In October 1995, Nusseibeh, Inc. entered into an agreement to sell the Woodhill Shoprite business to 664 Market Company, Inc. One of the terms of the agreement provided for a separate management contract to be in effect starting on the date the purchaser took possession, until the close of business on the day approval of the liquor permit transfer was received. During the term of the management agreement, the business was to be managed by 664 Market Company, Inc. and Anthony Pendleton on behalf of Nusseibeh, Inc. Under paragraph six of the management agreement, Nusseibeh, Inc. agreed "to file all tax returns during the term of this Agreement."

{¶ 4} At the same time the sale and management agreements were entered into, Nusseibeh, Inc. leased the premises occupied by Woodhill Shoprite to Anthony Pendleton for 36 months at a rental of $7,500 per month.

{¶ 5} In September 1994 and 1995, prior to the sale agreement, Nusseibeh signed applications for renewal of Nusseibeh, Inc.'s liquor permit, as president of Nusseibeh, Inc. In September 1996 and 1997, after the sale agreement was signed, and while the business was being operated under the management

agreement, Nusseibeh continued to sign applications for renewal of the liquor permit as president of Nusseibeh, Inc. When he filed the applications for renewal of the liquor permit for 1996 and 1997, Nusseibeh affirmed that no one other than Nusseibeh, Inc. had any legal or beneficial interest in the permit business. The liquor permit was never transferred from Nusseibeh, Inc. to 664 Market Company, Inc.

{¶ 6} While the business was being operated under the management agreement, sales tax returns were made using Nusseibeh, Inc.'s vendor's license through March 1997. Nusseibeh, Inc.'s vendor's license was cancelled in 1998. Nusseibeh was listed on the vendor's license application as the president and secretary/treasurer of Nusseibeh, Inc. The Ohio lottery sales license obtained by Nusseibeh, Inc. was used by the business until it was cancelled in August 1997, for failure to make prompt and accurate payments to the Lottery Commission.

{¶ 7} In November 1997, the Tax Commissioner made a sales tax assessment against Nusseibeh, Inc. for the period January 1, 1994, through March 31, 1997. The corporation did not contest the assessment. After the assessment against Nusseibeh, Inc. was not paid, a derivative assessment was made against Nusseibeh personally. Nusseibeh filed a petition for reassessment, which was denied by the commissioner. Nusseibeh filed a notice of appeal with the Board of Tax Appeals ("BTA"). At the hearing before the BTA, Nusseibeh testified that during the time period involved he was running other businesses and he never personally supervised any of the day-to-day operations of the Woodhill Shoprite business.

{¶ 8} After reviewing the testimony and evidence presented, the BTA affirmed the assessment, finding that Nusseibeh had not met his burden to prove error on the part of the Tax Commissioner. Therefore, the BTA found that Nusseibeh as the sole corporate officer and sole shareholder of Nusseibeh, Inc. was derivatively liable for the sales tax assessed against Nusseibeh, Inc. Nusseibeh filed a motion for reconsideration, which was denied by the BTA.

{¶ 9} This cause is now before the court as an appeal as of right.

{¶ 10} The question raised in this case is whether Nusseibeh, as the sole corporate officer and sole shareholder of Nusseibeh, Inc., is derivatively liable for the sales tax assessment made against Nusseibeh, Inc. Nusseibeh contends that he is not liable because the Tax Commissioner did not prove that he did not sell his business. Nusseibeh misunderstands the role of the hearing before the BTA. At the hearing before the BTA, the burden was on Nusseibeh to show that the Tax Commissioner's assessment was in error. In *Federated Dept. Stores, Inc. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 450 N.E.2d 687, we stated that "when an assessment is contested, the taxpayer has the burden '* * * to show in what manner and to what extent * * *' the commissioner's investigation and

audit, and the findings and assessments based thereon, were faulty and incorrect." (Ellipses sic.) Id., quoting *Midwest Transfer Co. v. Porterfield* (1968), 13 Ohio St.2d 138, 141, 42 O.O.2d 365, 235 N.E.2d 511. Thus, the Tax Commissioner's findings are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful. *Hatchadorian v. Lindley* (1986), 21 Ohio St.3d 66, 21 OBR 365, 488 N.E.2d 145, paragraph one of the syllabus.

{¶ 11} When considering derivative personal liability assessed under R.C. 5739.33, we are concerned only with the liability of the person assessed. The assessment made against the corporation, *i.e.*, Nusseibeh, Inc., is not in issue when considering a derivative assessment because "[o]nce the assessment against the corporation becomes conclusive by the failure to present objections thereto the officer is bound by the oscitancy of his corporation." *Rowland v. Collins* (1976), 48 Ohio St.2d 311, 313, 2 O.O.3d 450, 358 N.E.2d 582.

{¶ 12} The statutory basis for issuing a derivative sales tax assessment against a corporate officer is found in R.C. 5739.33, which provides that "[i]f any corporation * * * required to file returns and to remit tax due to the state under this chapter fails for any reason to make the filing or payment, any of its employees having control or supervision of or charged with the responsibility of filing returns and making payments, or *any of its officers * * * who are responsible for the execution of the corporation's * * * fiscal responsibilities,* shall be personally liable for the failure. * * * The sum due for the liability may be collected by assessment in the manner provided in section 5739.13 of the Revised Code." (Emphasis added.)

{¶ 13} Thus, personal liability is limited to those officers who are responsible for the execution of the corporation's fiscal responsibilities. One of the fiscal responsibilities of every corporation is to pay the proper amount of sales tax. Every corporation will have one or more officers who are responsible for the corporation's fiscal responsibilities and, therefore, responsible for the corporation's payment of the proper amount of sales tax.

{¶ 14} To determine whether an individual corporate officer is responsible for a corporation's fiscal responsibilities requires an assessment of the responsibilities of that officer. However, in this case such a determination does not need to be made. When there is only one corporate officer, that officer has the responsibility for the execution of the corporation's fiscal responsibilities. Here, Nusseibeh, as the sole corporate officer, is the officer responsible for the corporation's fiscal responsibilities. As such he cannot delegate that responsibility. *Spithogianis v. Limbach* (1990), 53 Ohio St.3d 55, 559 N.E.2d 449.

{¶ 15} The facts in this case are clear. Although Nusseibeh intended to sell his business, he knew it was being operated under the management agreement until the liquor permit was transferred. R.C. 4303.271 requires the Tax Commis-

sioner to examine sales and withholding tax records to determine whether a vendor is a tax delinquent before a liquor permit may be renewed. Nusseibeh testified that he continued to sign the liquor permit renewals, because if the liquor permit was lost "that store will be out of business," and the buyer would stop paying him and he would then "have to pay the bank out of my pocket." This result may seem harsh, but Nusseibeh's inattention to the business of Nusseibeh, Inc. cannot be used as a basis for avoiding personal liability.

{¶ 16} Accordingly, we hold that the decision of the Board of Tax Appeals is reasonable and lawful and affirm it.

Decision affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, COOK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

PFEIFER, J., dissents.

---

Raed Nusseibeh, pro se.

Jim Petro, Attorney General, and Barbara L. Barber, Assistant Attorney General, for appellee.