CREW 4 YOU, INC., APPELLEE AND CROSS-APPELLANT, *v.* WILKINS, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *Crew 4 You, Inc. v. Wilkins,* 105 Ohio St.3d 356, 2005-Ohio-2167.]

(No. 2003–1960—Submitted March 1, 2005—Decided May 18, 2005.)

O'DONNELL, J.

{¶ 1} The principal issues presented in this appeal concern whether appellee and cross-appellant, Crew 4 You, Inc., sold taxable employment services, and, if so, whether any of those sales are exempt from the state sales tax under the "resale exception" for goods or services resold by the buyer to another purchaser.

{¶ 2} Regarding the first issue, both appellant and cross-appellee, the Tax Commissioner, and the Board of Tax Appeals ("BTA") found that Crew 4 You did in fact sell taxable employment services. Crew 4 You has filed a cross-appeal on that question, but we affirm the decision of the BTA for the reasons explained below.

{¶ 3} Regarding the second issue, the Tax Commissioner found that the resale exception did not apply, but the BTA reached the opposite conclusion, finding that the resale exception did apply, and it therefore determined that Crew 4 You did not owe sales tax on its resale of employment services. The Tax Commissioner has appealed that issue to our court, and for the reasons explained below, we reverse the decision of the BTA because Crew 4 You has not shown that the

employment services were in fact resold by the buyer. The record reveals rather that the buyer did pass on the benefit of the employment services to others, but those employment services were not resold "in the form in which [they had been] received" by the buyer of them, as required by R.C. 5739.01(E), the resale-exception statute.

*Facts and Procedural History*

{¶ 4} Crew 4 You, Inc., of Spencer Township, Ohio, located in Medina County, is a company that assists in producing live television broadcasts of sporting events. Such broadcasts typically involve the coordinated efforts of three kinds of companies at the site of the sporting event: a broadcasting entity, a trucking company, and a crewing company. Crew 4 You falls into the last category.

{¶ 5} These three kinds of companies work together in the following manner. The broadcasting entity owns the right to broadcast games for various teams. An example of a broadcasting entity is WGN in Chicago, which televises Chicago Cubs baseball games. When a sports team like the Cubs travels to another city for a game, however, the broadcasting entity sends its on-air announcer(s), a producer, and a director to the out-of-town venue. A trucking company then supplies equipment—cameras, electrical cables, microphones, etc.—to help create the live broadcast. The trucking company, in turn, hires personnel—a crew—to operate the equipment. Crew 4 You is a crewing company that supplies qualified technicians to trucking companies and broadcasting entities involved in the production of live sports broadcasts.

{¶ 6} The Tax Commissioner conducted an audit of the sales reported by Crew 4 You for the period of September 1, 1996, through December 31, 1999, and concluded that the company owed more than $156,000 for unpaid sales taxes, penalties, and interest charges. Crew 4 You objected to that assessment, and a hearing was held before the Tax Commissioner in March 2001.

{¶ 7} Following that hearing, the Tax Commissioner issued a written decision in which he rejected the objections raised by Crew 4 You. The Tax Commissioner concluded that the company owed sales taxes on employment services it had provided to trucking companies and to broadcasting entities during the audit period and found that the resale exception to the sales tax did not apply to Crew 4 You because the services provided by the company were not resold by the purchasers of those services. The Tax Commissioner, however, made other adjustments not relevant to this appeal, which reduced the company's tax liability to $112,021.11.

{¶ 8} Crew 4 You then appealed to the BTA, which held a hearing on the matter in March 2003. Crew 4 You presented three witnesses, and both parties offered exhibits. The BTA sided with the Tax Commissioner on the question of whether Crew 4 You had provided taxable employment services to its customers

but agreed with Crew 4 You that some of the company's services were not taxable under the R.C. 5739.01(E)(1) resale exception for employment services that are resold by the purchaser.

{¶ 9} The Tax Commissioner has appealed from the latter portion of the BTA's decision, and Crew 4 You has cross-appealed from the former.

*Standard of Review*

{¶ 10} In reviewing a decision of the BTA, this court determines whether it is "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 498, 739 N.E.2d 783. The court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will affirm them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 11} As for the burden of proof, it rests on the taxpayer "to show the manner and extent of the error in the Tax Commissioner's final determination." *Standards Testing Laboratories, Inc. v. Zaino,* 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30. The Tax Commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." *Nusseibeh v. Zaino,* 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10. Any claimed exemption from taxation must be strictly construed, and the taxpayer must affirmatively establish his or her right to the exemption. *Campus Bus Serv. v. Zaino,* 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8.

*The Tax on Retail Sales*

{¶ 12} Under R.C. 5739.02, a tax is levied on "each retail sale made in this state." According to R.C. 5739.02(C), "it is presumed that all sales made in this state are subject" to that tax.

{¶ 13} Ohio has imposed a sales tax on employment services since 1993. Am.Sub.H.B. No. 904, 144 Ohio Laws, Part IV, 6598, 6689, 6797 (Section 131). The terms "sale" and "selling" are defined in R.C. 5739.01(B) to include all transactions in which consideration has been or is to be exchanged and in which "[e]mployment service is or is to be provided." R.C. 5739.01(B)(3)(k). The term "employment service" is in turn defined in R.C. 5739.01(JJ) as follows:

{¶ 14} " 'Employment service' means providing or supplying personnel, on a temporary or long-term basis, to perform work or labor under the supervision or control of another, when the personnel so supplied receive their wages, salary, or other compensation from the provider of the service. 'Employment service' does not include:

{¶ 15} "(1) Acting as a contractor or subcontractor, where the personnel performing the work are not under the direct control of the purchaser."

*The Cross–Appeal Filed by Crew 4 You*

{¶ 16} The Tax Commissioner and the BTA both found that Crew 4 You is in the business of providing an "employment service," and that finding is supported by facts in the record before us.

{¶ 17} We have explained that services provided by an individual or other taxable entity must meet three requirements to qualify as "employment services" for purposes of the sales tax statutes in Ohio: (1) the service provider "must provide or supply personnel on a temporary or long-term basis, (2) the personnel must perform work or labor under the supervision or control of another, and (3) the personnel must receive their wages, salary, or other compensation from the provider of the service." *Moore Personnel Services, Inc. v. Zaino,* 98 Ohio St.3d 337, 2003-Ohio-1089, 784 N.E.2d 1178, ¶ 14.

{¶ 18} All of those criteria—which flow from the text of R.C. 5739.01(JJ)—are satisfied in this case.

{¶ 19} Regarding the first, the president of Crew 4 You testified before the BTA that her company "locate[s] personnel for sports television events." Other testimony before the BTA established that trucking companies supply broadcasting entities with cameras and other video and audio equipment for sporting-event broadcasts, and then crewing companies like Crew 4 You locate the necessary personnel to operate that equipment. As the president of Crew 4 You explained, "we pass on the final crew list to the trucking company" once Crew 4 You has lined up the personnel needed for a particular broadcast or series of broadcasts.

{¶ 20} Crew 4 You, then, is in the business of "providing or supplying personnel, on a temporary or long-term basis," R.C. 5739.01(JJ), and the BTA correctly determined that the first part of the test in *Moore* had been met.

{¶ 21} Regarding the second, as determined by the BTA, the personnel supplied by Crew 4 You "perform work or labor under the supervision or control of another." *Moore,* 98 Ohio St.3d 337, 2003-Ohio-1089, 784 N.E.2d 1178, ¶ 14. The BTA reviewed the record on this point and noted several key statements in the testimony that supported its conclusion. The president of a trucking company that routinely deals with Crew 4 You testified that the producer and director from the broadcasting entity that hires the trucking company "will actually say what time they want the crew call and when the crew will break for lunch. They really control everything at the location where the cameras are placed." That same trucking company official testified before the BTA that the director or the producer from the broadcasting entity decides what needs to be done at the

sporting events, and he explained that the director "really calls every shot" during the broadcasts.

{¶ 22} The foregoing, along with substantial documentary evidence, supports the BTA's conclusion that broadcasting entities supervise or control the personnel supplied by crewing companies like Crew 4 You at televised sporting events. Written agreements between broadcasting entities and trucking companies that did business with Crew 4 You during the Tax Commissioner's audit period provide detailed specifications as to the equipment needed at sporting events, the placement of cameras and microphones, and the schedule of preproduction meetings, rehearsals, and game start times. The broadcasting entity determines the equipment it needs, the trucking company provides that equipment, and the crewing company supplies personnel to operate the equipment. The broadcasting entity then deploys that equipment and those persons when and where they are needed at the sporting event.

{¶ 23} To be sure, a provider of personnel does not perform a taxable "employment service" when that provider acts "as a contractor or subcontractor, where the personnel performing the work are not under the direct control of the purchaser." R.C. 5739.01(JJ)(1). The BTA found, however, that this exception in the sales tax statute did not apply to Crew 4 You, because its personnel work under the control of the broadcasting entity's producer and director, rather than under the control of Crew 4 You itself. In essence, the BTA determined that Crew 4 You is not a contractor or subcontractor, and that finding is supported by the record.

{¶ 24} Broadcasting entities and trucking companies contact crewing companies seeking personnel. Crew 4 You identifies skilled personnel and supplies a list of names to the trucking company and to the broadcasting entity. The crew reports to the site of the sporting event and performs the technical work that the broadcasting entity's producer and director need from them to create the live broadcast in the way that the broadcasting entity desires. Testimony before the BTA established this evidence in the record before us.

{¶ 25} Crew 4 You does not act as a contractor or subcontractor in its dealings with trucking companies and broadcasting entities. Contractors or subcontractors are hired to reach a final result and are generally free to use their own methods in achieving that result. Evidence presented to the BTA showed that Crew 4 You is not hired to broadcast sporting events or to achieve any other final result. It does not dictate what happens during live television broadcasts. Instead, Crew 4 You is in the business of locating skilled technicians and others who are capable of operating technical equipment, and it supplies these personnel to the producers and directors to set up and operate broadcasting equipment on selected days. It is the broadcasting entity—not Crew 4 You—that determines

how many crew members are needed, where they will work at the event, which camera shots will be used, and, ultimately, how the broadcast will appear to the viewing public.

{¶ 26} If a broadcasting entity or a trucking company hired audio technicians, video operators, or other similar personnel without using a crewing company like Crew 4 You, then no taxable "employment service" as defined in R.C. 5739.01(JJ) would be involved. And although the R.C. 5739.01(JJ)(1) contractor/subcontractor exception to the employment service sales tax might apply if Crew 4 You had substantial discretion in actually producing the broadcast, all the evidence presented to the BTA indicates that Crew 4 You simply provides to broadcasting entities and trucking companies the skilled personnel at agreed-upon rates for particular days.

{¶ 27} When a broadcasting entity or a trucking company arranges with a personnel provider like a crewing company to ensure that a trained worker will report to a particular sporting event and do what the broadcasting entity directs there, that crewing company is providing a taxable "employment service" as that term is defined in R.C. 5739.01(JJ). The BTA's factual findings on this issue are supported by the record, and the legal conclusion drawn by the BTA from those findings is reasonable and consistent with the relevant statute. The BTA correctly determined that "the personnel [from Crew 4 You] must perform work or labor under the supervision or control of another," *Moore,* 98 Ohio St.3d 337, 2003-Ohio-1089, 784 N.E.2d 1178, at ¶ 14, and also properly rejected the argument that Crew 4 You is a contractor or subcontractor.

{¶ 28} Regarding the third part of the *Moore* test for determining whether taxable employment services have been provided—"the personnel must receive their wages, salary, or other compensation from the provider of the service"—the BTA's factual findings are undisputed. The *Moore* test's third part mimics the text of R.C. 5739.01(JJ), and the BTA properly concluded that this criterion was satisfied in this case.

{¶ 29} The Tax Commissioner's final determination explains how the workers provided by Crew 4 You to broadcasting entities and trucking companies are paid:

{¶ 30} "Payment is made after the game is broadcast. Crew 4 You invoices the mobile production company [the trucking company] for each technician's time based upon the industry's standard hourly rates in addition to a 'crewing fee.' The mobile production companies pay Crew 4 You. Crew 4 You pays the technicians for their work."

{¶ 31} Crew 4 You does not dispute this finding but argues that the money it pays to the technicians—the crew members—for the work that they perform for broadcasting entities is not "wages, salary, or other compensation." R.C.

5739.01(JJ). That argument is not tenable. The money paid to crew members by Crew 4 You is designed to compensate them for their services, and payment of that money by Crew 4 You falls squarely within the terms of R.C. 5739.01(JJ).

{¶ 32} For the reasons explained above, the BTA properly concluded that Crew 4 You provided an "employment service" as that term is defined in R.C. 5739.01(JJ). Evidence in the record supports the BTA's view that (1) Crew 4 You provided or supplied personnel, (2) the personnel supplied by Crew 4 You performed work under the supervision or control of another, (3) Crew 4 You did not act as a contractor or subcontractor, and (4) the personnel supplied by Crew 4 You received their wages, salary, or other compensation from Crew 4 You itself. Thus, the BTA's conclusion that Crew 4 You provided taxable employment services was reasonable and lawful. We therefore affirm the BTA's decision on the issues raised in the cross-appeal filed by Crew 4 You.

*The Appeal Filed by the Tax Commissioner*

{¶ 33} The Tax Commissioner concluded that the so-called resale exception in R.C. 5739.01(E) did not apply to the transactions between Crew 4 You and the trucking companies, and the commissioner therefore determined that Crew 4 You owed sales tax on its sales of employment services. The BTA, however, decided that the company did not owe any sales tax on those sales in which the benefit of the company's personnel was passed on or resold by the trucking companies to the broadcasting entities. The Tax Commissioner has appealed from that decision, and his argument has merit.

{¶ 34} R.C. 5739.01(E) excludes from the definition of "[r]etail sale"—and therefore excludes from the R.C. 5739.02 sales tax on retail sales—any sale "in which the purpose of the consumer is to resell the thing transferred or benefit of the service provided, by a person engaging in business, in the form in which the same is, or is to be, received by the person." In other words, when the purchaser's intent in buying a good or service is to resell it to yet another purchaser without changing the good or service in any way, then the original purchase is not considered a "retail sale" and is therefore not subject to the sales tax on retail sales.

{¶ 35} The BTA concluded that the "benefit of Crew 4 You's personnel services (a flexible, temporary workforce) is passed on through the trucking company to the broadcast entity." The resale exception therefore applies to any employment services that trucking companies bought from Crew 4 You and resold to broadcasting entities, the BTA explained.

{¶ 36} As the Tax Commissioner stated in his final determination, however, the trucking companies "do not resell employment services." The trucking companies pay crewing companies like Crew 4 You to supply personnel, and then the trucking companies use those personnel to help the broadcasting entities produce

a live broadcast of a sporting event. The personnel services are not resold in the same form in which they are purchased. The Tax Commissioner explained, "The benefit to the broadcast entities is not the labor of the technicians; it is the end product of that labor—staffed equipment ready for use in broadcasting a sporting event." In short, the good or service that the trucking companies received from Crew 4 You was different from the good or service that the broadcasting entities received from the trucking companies.

{¶ 37} The parties do not dispute the fact that the sale of employment services is taxable in Ohio. Because, as we have explained above, Crew 4 You provided an "employment service" as that term is defined in R.C. 5739.01(JJ), the critical question is whether Crew 4 You owes the sales tax or whether instead the trucking companies owe the sales tax on the sale of the employment services that Crew 4 You provided. Under the R.C. 5739.01(E) resale exception, the trucking companies owe the sales tax if they bought the services but then resold them in the same form to the broadcasting entities. Otherwise—as the Tax Commissioner found—Crew 4 You owes the sales tax.

{¶ 38} We agree with the Tax Commissioner's view that the trucking companies did not resell employment services, and therefore Crew 4 You owes sales tax on its retail sale of those services. A seller of an "employment service" as that term is used in Ohio pays the "wages, salary, or other compensation" of the personnel. R.C. 5739.01(JJ). The trucking companies did not pay the personnel supplied by Crew 4 You, so those companies did not sell an employment service. Crew 4 You was the only seller of employment services in the three-way transaction involving Crew 4 You, the trucking companies, and the broadcasting entities. Crew 4 You owes sales taxes on the money it earned for providing those services.

{¶ 39} In a recent case involving the sale of employment services, this court rejected another taxpayer's effort to rely on the resale exception. In that case— *Corporate Staffing Resources, Inc. v. Zaino* (2002), 95 Ohio St.3d 1, 764 N.E.2d 1006—we determined that a provider of employment services was not entitled to the resale exception when the computer hardware company that hired the temporary employees from the employment-service provider did not resell those services. The computer hardware company had purchased "a temporary and flexible work force of sufficient size and expertise," and the computer company's customers had in turn paid the computer company to keep the customers' computers up and running. Id. at 3, 764 N.E.2d 1006. The employment services—the temporary workers—were "a means to an end" for the computer company's customers, rather than an end in itself. Id. Those services were not, in other words, resold "in the form in which [they had been] received," as would be required for the R.C. 5739.01(E) resale exception to apply to the initial sale of

the employment services. The computer company paid for employment services and used the workers it hired to service computers. As we explained in that case, the company that had provided the temporary workers and had been paid for that service owed taxes on the money it earned in the transaction. Id. at 4–5, 764 N.E.2d 1006.

{¶ 40} The same is true in this case. Trucking companies "go[ ] to the crewing company * * * and ask[ ] them to provide a crew," according to the president of Crew 4 You. As is undisputed from the Tax Commissioner's final determination, trucking companies pay crewing companies like Crew 4 You for providing crew members who can operate audio and video equipment, and the trucking companies in turn provide "staffed equipment ready for use in broadcasting a sporting event."

{¶ 41} As with the computer company in the *Corporate Staffing Resources* case, the trucking companies in this case paid an employment-services provider to find skilled workers for certain jobs and then used those workers to perform a service needed by a third company. The employment services were not resold by the computer company in *Corporate Staffing Resources* or by the trucking companies in this case. The company that did sell an "employment service" as that term is defined in R.C. 5739.01(JJ) was Crew 4 You, and that company now owes taxes, as did the employment-service provider in *Corporate Staffing Resources*.

{¶ 42} Other decisions from this court support that view. In *Hyatt Corp. v. Limbach* (1994), 69 Ohio St.3d 537, 540, 634 N.E.2d 995, we explained that because a hotel's act of renting rooms to guests for stays of more than 30 consecutive days was exempted from the sales tax by R.C. 5739.01(N), the hotel could not be deemed to have "resold" the use of linens in those rooms that the hotel had paid to have cleaned by a linen-cleaning service. The same principle applies in this case: Because the trucking companies did not sell a taxable "employment service" to the broadcasting entities—because the provider of "employment service" under R.C. 5739.01(JJ) must pay the "wages, salary, or other compensation" of the workers, and Crew 4 You (rather than the trucking companies) paid the workers' wages—the trucking companies cannot be deemed to have resold the employment services that they purchased from Crew 4 You. In other words, if the trucking companies did not *sell* employment services at all, then they certainly did not *resell* them. See, also, *Bellemar Parts Indus., Inc. v. Tracy* (2000), 88 Ohio St.3d 351, 353, 354, 725 N.E.2d 1132 (explaining that "where a taxpayer contracts with a company for a service and receives and resells the benefit of that service in the same form, the [resale] exception [in R.C. 5739.01(E) ] applies," and rejecting a taxpayer's effort to claim the resale exception when employment services were not resold in the same form by the buyer of them).

{¶ 43} The BTA went astray by failing to examine whether the trucking companies had acted with "the purpose * * * to resell the thing transferred or benefit of the service provided * * * in the form in which [it had been] received." R.C. 5739.01(E). Those critical requirements of the resale exception in the sales tax statutes were not satisfied in this case. The trucking companies did not sell employment services as those services are defined in R.C. 5739.01(JJ), so those companies certainly cannot be said to have resold the services purchased from Crew 4 You. As we stated in another resale-exception case, a critical question is "whether * * * [the buyer of a good or service] 'sold' the items" when the original seller claims that the resale exception applies. *Gen. Mills Fun Group, Inc., Kenner Products Div. v. Lindley* (1982), 1 Ohio St.3d 27, 28, 1 OBR 63, 437 N.E.2d 591 (rejecting a taxpayer's request for application of the resale exception because the buyer to whom the taxpayer sold artwork did not sell—and therefore did not "resell"—the artwork). The BTA did not examine that question.

{¶ 44} The record indicates that crewing companies did not sell or resell employment services, and if there was no resale, then the resale exception cannot apply. Crew 4 You was the only company that sold employment services in the three-way transactions involving Crew 4 You, the trucking companies, and the broadcasting entities. Those sales are taxable, and Crew 4 You—not the trucking companies—owes the sales tax on the money it took in from those sales.

{¶ 45} The BTA's decision granting Crew 4 You an exemption from sales tax under the resale exception is not supported by the law or the facts. Crew 4 You sold employment services, but the trucking companies did not. Instead, the trucking companies provided "staffed equipment ready for use in broadcasting a sporting event." That service is not the same benefit in the same form it was in when the trucking companies purchased it from Crew 4 You, and the trucking companies certainly did not sell an "employment service" as that term is defined in R.C. 5739.01(JJ). Crew 4 You *did* sell employment services, and it has not met its burden of showing that it is entitled to an exemption from the sales tax that R.C. 5739.01(B)(3)(k) imposes on the retail sale of those services.

{¶ 46} In conclusion, the BTA correctly determined that Crew 4 You sold an "employment service" as that term is defined in R.C. 5739.01(JJ) but incorrectly found that the R.C. 5739.01(E) resale exception applies to the sales that Crew 4 You made to trucking companies. The decision of the BTA is affirmed on the former issue and is reversed on the latter.

Decision affirmed in part
and reversed in part.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

Buckingham, Doolittle & Burroughs, L.L.P., Steven A. Dimengo, and David W. Hilkert, for appellee and cross-appellant.

Jim Petro, Attorney General, and Robert C. Maier, Deputy Attorney General, for appellant and cross-appellee.