**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Seaton Corp. v. Testa,* **Slip Opinion No. 2018-Ohio-4911.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4911

SEATON CORPORATION ET AL., APPELLEES, *v*. TESTA, TAX COMMR., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Seaton Corp. v. Testa,* Slip Opinion No. 2018-Ohio-4911.]**

*Taxation—R.C. 5739.01(B)(3)(k)—Sales tax imposed on transactions by which "employment service" is provided—R.C. 5739.01(JJ)—Definition of "employment service"—Providing personnel to perform work or labor "under the supervision or control of another"—Employment-service inquiry under R.C. 5739.01(JJ) focuses on who controlled workers' schedules and workplace assignments based on the evidence presented, with the "supervision or control" exercised involving the specific work performed by the provided personnel.*

(No. 2016-1188—Submitted June 26, 2018—Decided December 12, 2018.)

APPEAL from the Board of Tax Appeals, Nos. 2015-224 and 2015-743.

————————————

**Per Curiam.**

{¶ 1} The question in this appeal is whether the service provided by appellee Seaton Corporation to appellee Kal Kan Foods, Inc., constitutes a taxable "employment service" under R.C. 5739.01(B)(3)(k) (including "employment service" in the sales-tax definition of "sale") and 5739.01(JJ) (defining "employment service"). The Board of Tax Appeals ("BTA") found that the service was not taxable, because Seaton—not Kal Kan—supervised and controlled the workers that Seaton supplied to Kal Kan's plant. The tax commissioner, appellant, challenges this finding. But we conclude that the BTA's decision was reasonable and lawful and therefore affirm its decision.

## I. FACTS

{¶ 2} In a 2003 contract, Seaton agreed to "furnish, manage and supervise" supplemental staffing to Kal Kan's parent company, a division of Mars, Inc. In October 2009, Mars and Seaton entered into a new contract for the same service. These contracts required Seaton to screen, hire, and train lower-level workers to assist in production operations at Kal Kan's pet food manufacturing plant in Columbus, Ohio. This included maintaining an on-site office at Kal Kan's plant, conducting interviews and testing applicants, and providing job orientation, uniforms, and safety equipment to those individuals selected for employment with Seaton at Kal Kan's plant. Seaton was also required to schedule its workers, maintain an attendance policy, and process payroll. And by agreement, Seaton had "the exclusive right to control" Seaton workers; neither Kal Kan nor Seaton could "assign, direct, or oversee" the activities of the other party's workforce.

{¶ 3} As a result of audits performed by the tax commissioner, the commissioner levied a sales-tax assessment against Seaton and a use-tax

assessment against Kal Kan.[1]  Both taxpayers filed petitions for reassessment, but the tax commissioner upheld the assessments that are at issue in this case.

{¶ 4} Both Kal Kan and Seaton appealed to the BTA, and the appeals were consolidated.  The taxpayers challenged the tax commissioner's findings, arguing that because Seaton maintained supervision and control over the workers it supplied to Kal Kan, the service that Seaton provided did not meet the statutory definition of an "employment service" under R.C. 5739.01(B)(3)(k) and 5739.01(JJ).

{¶ 5} At the BTA hearing, Mike Dawson, Seaton's director of operations for staff management, testified that Seaton's service at Kal Kan's plant was "an outsource for management model" and that in accordance with the parties' agreements, Seaton maintained its own management structure at the plant, separate and apart from Kal Kan's management.  He further explained that Seaton maintained an on-site presence to recruit, train, and manage its employees in their daily tasks, including hiring, scheduling, making job assignments, monitoring work productivity and safety, and communicating any new procedures.  The testimony of Vikki Mayabb, a Seaton supervisor, corroborated Dawson's statements.  And Bryan Sharp, one of Kal Kan's operations managers, testified that while Kal Kan communicated production goals to Seaton, Seaton bore responsibility for determining the number of employees needed and for providing any necessary training.

{¶ 6} Based upon the hearing testimony and terms of the parties' written agreements, the BTA found that the tax commissioner's conclusion that Kal Kan exercised supervision or control over Seaton's employees was not supported by the evidence in the record and accordingly determined that Seaton did not provide an

---

[1] The vendor is usually obligated to collect sales tax from the consumer, who is the ultimate taxpayer, and remit the tax collected to the state.  R.C. 5739.03(A).  But when, as here, the tax has not been collected and remitted, both the vendor and the consumer may be assessed.  R.C. 5739.13(A).

"employment service" to Kal Kan during the audit periods. The tax commissioner now appeals that determination.

## II. STANDARD OF REVIEW

{¶ 7} On appeal, we must determine whether the BTA's decision is both "reasonable and lawful." *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14; R.C. 5717.04. In so doing, we defer to the BTA's factual findings "if they are supported by reliable and probative evidence, and we afford deference to the BTA's determination of the credibility of witnesses and its weighing of the evidence subject only to an abuse-of-discretion review on appeal." *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 10. However, we "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001).

## III. ANALYSIS

### A. The BTA reviews the tax commissioner's factual findings de novo

{¶ 8} In his first proposition of law, the tax commissioner asserts that the BTA was required to affirm his findings unless Seaton or Kal Kan proved that they were unreasonable or unlawful. But we rejected this same argument in *Accel, Inc. v. Testa*, 152 Ohio St.3d 262, 2017-Ohio-8798, 95 N.E.3d 345. In *Accel*, we held that "the BTA owed no deference to the tax commissioner's findings beyond placing the evidentiary burden on the taxpayer * * * to show [the findings] to be, by a preponderance of the evidence, incorrect." *Id.* at ¶ 16. We therefore reject the commissioner's first proposition of law.

### B. The BTA reasonably and lawfully determined that Seaton did not provide "employment service" to Kal Kan

{¶ 9} In his second proposition of law, the tax commissioner focuses on the requirement of "supervision or control" in R.C. 5739.01(JJ)'s definition of employment service. To address this issue, we look to the statutory requirements

of a qualifying employment service and we must determine the applicable scope of the "supervision or control" required.

*1. Pursuant to R.C. 5739.01(JJ), a service must meet three requirements to qualify as an employment service*

{¶ 10} Ohio imposes a sales tax on "each retail sale made in this state." R.C. 5739.02. For purposes of the tax, a "sale" includes "[a]ll transactions by which * * * [e]mployment service is or is to be provided." R.C. 5739.01(B)(3)(k). "Employment service," in turn, is defined as "providing or supplying personnel, on a temporary or long-term basis, to perform work or labor under the supervision or control of another, when the personnel so provided or supplied receive their wages, salary, or other compensation from the provider or supplier of the employment service." R.C. 5739.01(JJ).

{¶ 11} In *Moore Personnel Servs., Inc. v. Zaino*, 98 Ohio St.3d 337, 2003-Ohio-1089, 784 N.E.2d 1178, ¶ 14, we explained that R.C. 5739.01(JJ) establishes three requirements for a service to qualify as an "employment service": "(1) it must provide or supply personnel on a temporary or long-term basis, (2) the personnel must perform work or labor under the supervision or control of another, and (3) the personnel must receive their wages, salary, or other compensation from the provider of the service." In this case, the first and third requirements are satisfied because Seaton supplies personnel on a temporary or long-term basis to Kal Kan and Seaton processes payroll for its employees. The BTA determined, however, that the second requirement was not met because Seaton contractually retained and actually exercised both supervision and control over its workers at Kal Kan's plant. The tax commissioner challenges this finding because, in his view, Kal Kan's control over the manufacturing process and production lines equates to control over the Seaton workers themselves and, therefore, Seaton's service qualifies as an employment service.

*2. For purposes of R.C. 5739.01(JJ), the requirement of supervision or control is specific to the work or labor performed by Seaton's workers*

{¶ 12} In considering whether Seaton employees performed work or labor under the supervision or control of Kal Kan, we find instructive the analytical framework in *Crew 4 You, Inc. v. Wilkins*, 105 Ohio St.3d 356, 2005-Ohio-2167, 826 N.E.2d 817, which involved a television crew (Crew 4 You's employees) that assisted in the production of live television broadcasts of sporting events. *Id.* at ¶ 4. The primary question in *Crew 4 You* was whether Crew 4 You provided taxable employment services to the broadcasting entities that televised the events. *Id.* at ¶ 1, 5.

{¶ 13} In analyzing whether the broadcasting entities supervised or controlled Crew 4 You's employees, we agreed with the BTA's decision to focus on who controlled the workers' schedules and workplace assignments. In particular, we considered testimony that it was the broadcasting entities that determined the number of crew members for the events, their work schedules, and their assignments at the jobsites. *Id.* at ¶ 21, 25. And there was testimony that employees of one typical broadcasting entity "decide[d] what need[ed] to be done at the sporting events" and that "the director 'really called every shot' during the broadcasts." *Id.* at ¶ 21. We also noted that the written agreements in the record supported the testimony by providing "detailed specifications" of the broadcasting entities' equipment needs at the jobsites and the schedules for preproduction meetings, rehearsals, and game start times. *Id.* at ¶ 22. In particular, we found it important that the broadcasting entities both managed the crew members' schedules and directed their actual work at the jobsites.

{¶ 14} Considering these same factors here, we cannot conclude that the BTA erred in finding that Kal Kan did not supervise or control Seaton's employees. Sharp testified that Seaton determined the number of workers needed for any particular shift and Dawson confirmed that Seaton scheduled its workers, made

their job assignments, and monitored their work production. Based upon the testimony, the BTA reasonably determined that "Kal Kan supervisors [had] no work-related interactions with Seaton workers on the job floor, unless a Seaton worker [was] committing a safety violation." BTA Nos. 2015-224 and 2015-743, 2016 WL 3884276, *3 (July 13, 2016).

{¶ 15} And unlike the situation in *Crew 4 You*, it was Seaton—not Kal Kan—that was contractually obligated to provide comprehensive on-site management of the Seaton workers at issue. In addition to preemployment screening of applicants, Seaton's responsibilities included worker orientation, worker-performance management, worker coaching and counseling, interacting with workers on a daily basis, processing time cards and payroll, and enforcing workplace rules. Indeed, as discussed earlier in this opinion, the contracts specifically granted Seaton "the exclusive right to control all" Seaton employees and prohibited both Seaton and Kal Kan from assigning, directing, or overseeing the activities of the other party's workforce.

{¶ 16} Thus, the evidence shows that Seaton contractually retained and, in practice, actually exercised the same level of supervision and control over its employees that the broadcasting entities exercised over the Crew 4 You workers in *Crew 4 You.* On this record, the BTA acted both reasonably and lawfully in determining that Seaton did not provide a qualifying employment service to Kal Kan under R.C. 5739.01(JJ).

{¶ 17} In reaching this conclusion, we reject the tax commissioner's argument that because Kal Kan maintained control over its manufacturing process, Kal Kan necessarily controlled the Seaton workers. As the appellant, the commissioner must show either an error of law by the BTA in its interpretation of the statute or a flaw in the BTA's factual findings. The commissioner has failed to do so.

{¶ 18} As previously discussed, the definition of employment service requires that the personnel at issue "perform work or labor under the supervision or control of another." R.C. 5739.01(JJ). It follows that the supervision or control exercised must be specific to the work or labor performed by the provided personnel—not to an overall production process. Accordingly, the BTA correctly determined that Kal Kan's control over the manufacturing process and production lines did not equate to control over the Seaton workers themselves. 2016 WL 3884276 at *3.

### 3. The BTA did not add a requirement to or misapply R.C. 5739.01(JJ)

{¶ 19} The tax commissioner also argues that the BTA added a requirement to and misapplied R.C. 5739.01(JJ). The commissioner first notes that while the statute uses the phrase "supervision *or* control" (emphasis added), the BTA in its decision stated that Kal Kan had "given over a small portion of its authority to Seaton * * * for the supervision *and* control of the Seaton workers" (emphasis added), 2016 WL 3884276 at *4. The commissioner argues that because the definition of employment service was satisfied if Kal Kan *either* supervised *or* controlled the Seaton workers, the BTA's statement indicates that it improperly added the requirement that the elements of supervision *and* control *both* had to be present for the statute to be met and the transaction found taxable. But this phrase used by the BTA was not a recitation or construction of the statutory requirements of an employment service. Rather, the BTA used the phrase "supervision and control" merely to describe the extent of authority that Seaton had over its own employees both in practice and pursuant to the specific terms of the parties' written agreements.

{¶ 20} The tax commissioner next points out that the BTA stated that Seaton workers were not under the "direct control" of Kal Kan, 2016 WL 3884276 at *4. Because "direct control" is a component of the exclusion for contractors and subcontractors in R.C. 5739.01(JJ)(1) in relation to the definition of employment

8

service in R.C. 5739.01(JJ), the commissioner alleges that the BTA misapplied the statute. We also find no merit to this assertion, which, like the previous one, takes the BTA's statement out of its context. The BTA's reference to "direct control" was not made regarding R.C. 5739.01(JJ) but was made merely to differentiate Kal Kan's authority to establish its own manufacturing processes and procedures from the situation regarding the Seaton workers.

{¶ 21} Accordingly, because the BTA properly analyzed which entity exercised supervision or control over the work or labor performed by Seaton's workers at Kal Kan's plant and those factual findings are supported by the record, its decision was reasonable and lawful, and we overrule the tax commissioner's second proposition of law.

## IV. CONCLUSION

{¶ 22} We affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

————————————

Baker & Hostetler, L.L.P., Edward J. Bernert, and Karen Sheffer, for appellees.

Michael DeWine, Attorney General, and Daniel W. Fausey and Sophia Hussain, Assistant Attorneys General, for appellant.

————————————