NATIONAL CITY BANK, CLEVELAND, APPELLANT,
*v*. WILKINS, TAX COMMR., APPELLEE.

NATIONAL CITY BANK, NORTHWEST, APPELLANT,
*v*. WILKINS, TAX COMMR., APPELLEE.

NATIONAL CITY BANK, COLUMBUS, APPELLANT,
*v*. WILKINS, TAX COMMR., APPELLEE.

NATIONAL CITY BANK, NORTHEAST, APPELLANT,
*v*. WILKINS, TAX COMMR., APPELLEE.

NATIONAL CITY BANK, DAYTON, APPELLANT,
*v*. WILKINS, TAX COMMR., APPELLEE.

[Cite as *Natl. City Bank v. Wilkins,*
111 Ohio St.3d 485, 2006-Ohio-6110.]

(Nos. 2005–1562, 2005–1563, 2005–1564, 2005–1565, and 2005–1566—
Submitted June 20, 2006—Decided December 6, 2006.)

---

O'DONNELL, J.

{¶ 1} The issue presented to us in this case concerns whether life-insurance policies owned by National City Bank appreciated when the insurance carriers declared a dividend or made an interest payment that National City chose to take in the form of additions to the cash surrender value of its policies. Pursuant to R.C. 5733.05(A)(4) as it existed during the years in question, "appreciation" is excluded from a financial institution's taxable net worth for Ohio franchise-tax purposes. The bank contends that the interest and dividend payments it received as additions to the cash surrender value of the policies should be treated as appreciation. While it is true that the policies increased in value, the increase did not result from appreciation of the asset, but rather from an outside source of revenue added to the value of the policy as issued. Hence, the increase did not result from the asset itself gaining value, and we conclude that the addition of interest and dividend payments did not amount to appreciation.

## Facts

{¶ 2} The appellants in these five consolidated cases are five subsidiaries of National City Bank, referred to collectively as "National City." During the years 1994 through 1998, National City owned several "bank-owned life insurance" ("BOLI") policies. A BOLI policy is a whole-life insurance policy purchased and owned by a bank to insure the lives of its employees. When an insured employee dies, the bank receives the death benefit payable under the policy.

{¶ 3} Like other whole-life insurance policies, a BOLI policy has a cash surrender value, which is payable to the policy owner—the bank—if the policy is surrendered by the bank prior to the death of the insured person or persons. When a BOLI policy is purchased by a bank, the cash surrender value is roughly equal to the premium paid by the bank for the policy. National City paid the full premium for its BOLI policies at the time it purchased each policy.

{¶ 4} Some of the BOLI policies guaranteed that the bank would receive a minimum monthly interest payment on the cash surrender value of the policies. Other BOLI policies provided for National City to receive dividends on the cash surrender value of the policies. In each instance, National City decided to accept the interest or dividend payments on a BOLI policy in the form of additions to the cash surrender value of the policy, rather than receive those payments in cash.

{¶ 5} National City treated the initial cash surrender value of each of its BOLI policies as an asset in its accounting records and treated any increases in that cash surrender value—attributable to the interest and dividend payments that National City received from the insurance companies—as increases in the value of its asset. This was done in accordance with generally accepted accounting principles. Accordingly, the cash surrender value of the bank's BOLI policies increased each time an insurer declared a dividend or credited National City with an interest payment generated by a policy.

{¶ 6} Further, National City never surrendered any of its BOLI policies during the tax years in question and therefore never received any payment for the cash surrender value of those policies during those years. The only cash payments that National City received from the BOLI policies were death benefits that the insurance companies paid when an insured bank employee or former employee died.

{¶ 7} R.C. Chapter 5733 describes the corporate franchise tax that Ohio imposes on each corporation "for the privilege of exercising its franchise during the calendar year." R.C. 5733.01(A). The tax is based on the "value of the issued and outstanding shares of stock" of the company. R.C. 5733.05.

{¶ 8} Pursuant to former R.C. 5733.05(A)(4)—a statutory provision applicable to financial institutions during most of the tax years at issue—"appreciation" was to be excluded when a bank or other corporation determined the value of its stock for franchise-tax purposes. 1993 Am.Sub.H.B. No. 152, 145 Ohio Laws, Part III, 4279–4280. The General Assembly has since amended the statute, and R.C. 5733.056(B), applicable to the tax year 1998, the last tax year at issue, now provides the same treatment of appreciation for financial institutions for franchise-tax purposes. R.C. 5733.05(A); 1997 Am.Sub.H.B. No. 215, 147 Ohio Laws, Part I, 1723, 1735–1736.

{¶ 9} The Tax Commissioner considered National City's claim that the value added to the BOLI policies constituted appreciation and issued a final determination in 2003 rejecting the bank's position. National City then challenged that decision before the Board of Tax Appeals ("BTA"), which held a hearing on the matter in September 2004.

{¶ 10} The BTA affirmed the Tax Commissioner, concluding that "the interest and/or dividends earned by the BOLI policies according to their specific contract terms do not constitute 'appreciation' as contemplated by R.C. 5733.05(A)(4)." The BTA held that the cash surrender value of the BOLI policies "does not independently increase in value," but instead "the increase is from the accumulated interest and dividends paid by the insurance company." The interest and dividend payments "are not an 'appreciation' of the * * * life insurance policy," because "the value of the underlying life insurance policy does not change," the BTA explained. Appreciation, the BTA added, is a term that refers to an intrinsic increase in an asset, rather than income produced by that asset. The BTA therefore affirmed the Tax Commissioner's decision to deny National City's refund claim.

{¶ 11} National City has now appealed that decision to this court.

## Standard of Review

{¶ 12} In reviewing a BTA decision, our standard of review is whether the decision is "reasonable and lawful." R.C. 5717.04. The court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will affirm them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 13} The burden of proof rests on the taxpayer "to show the manner and extent of the error in the Tax Commissioner's final determination." *Stds. Testing Laboratories, Inc. v. Zaino,* 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278,

¶ 30. The Tax Commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." *Nusseibeh v. Zaino*, 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10.

## Analysis

{¶ 14} The issue here concerns whether the increases in the cash surrender value of National City's BOLI policies should be treated as appreciation as specified in R.C. 5733.05(A)(4) and 5733.056(B) during the tax years at issue. National City contends that the increases it recorded in the cash surrender value of its BOLI policies for the years 1994 through 1998 should be treated as appreciation, and therefore should not be included as part of the bank's total book value for corporate franchise tax purposes. The commissioner, however, argues that the value of the policies did not appreciate for tax purposes, because the cash surrender value of the policies did not increase apart from the added value obtained from interest and dividend payments.

{¶ 15} As we noted ten years ago, "[t]here is no statutory definition of 'appreciation.'" *Edwards Industries, Inc. v. Tracy* (1996), 74 Ohio St.3d 643, 645, 660 N.E.2d 1181. In that case, the court concluded that the term "appreciation" as used in former R.C. 5733.05 referred to "an increase in value over some period of time." Id. We therefore gave the term "appreciation" its plain meaning. See Black's Law Dictionary (8th Ed.2004) 111 (defining "appreciation" as "[a]n increase in an asset's value, usu. because of inflation").

{¶ 16} As stated by the BTA in its decision, the cash-surrender-value aspect of a BOLI policy "is, in effect, an investment device." When the bank's investment in its insurance policies generated interest or dividends, it asked the carriers to add those payments to the cash value of its policies, thereby adding to the base amount on which the next interest or dividend payment would be calculated. The cash surrender value did not appreciate; instead, it grew larger solely because additional interest or dividend payments were added to it over time. According to the testimony of a senior vice-president of National City, all the increases in cash surrender value that the bank recorded for its BOLI policies came from interest or dividend payments from the insurance carrier.

{¶ 17} National City—in conformity with generally accepted accounting principles—recorded the interest and dividend payments as increases in the cash surrender value of its BOLI policies. Therefore, National City claims that it is entitled to treat the interest and dividend payments as appreciation because it did not record those payments in its books as interest or dividend income. Nonetheless, these payments represented an actual return on its investment in its insurance policies. The bank paid an up-front one-time premium for each BOLI policy and, in return, received dividends or regular interest payments, which the

bank chose to add to the cash value of its policies, thereby boosting the principal amount on which its future interest or dividend payments would be calculated.

{¶ 18} The two cases on which National City principally relies do not support its claim that the cash surrender value of the policies appreciated when the bank reinvested its interest or dividend payments. In *Edwards Industries*, 74 Ohio St.3d 643, 660 N.E.2d 1181, we rejected the taxpayer's claim that certain retained earnings should be treated as appreciation pursuant to former R.C. 5733.05(A)(4). And in *SHV N. Am. Corp. v. Tracy* (1994), 70 Ohio St.3d 395, 639 N.E.2d 64, we ruled that the depreciation of some corporate assets did not affect the calculation of appreciation for other corporate assets under former R.C. 5733.05(A)(4). Neither decision addressed the issue presented in this case, nor did either define "appreciation" in the fashion that National City requests us to do now.

{¶ 19} Rather, as the BTA determined, the cash surrender value of the BOLI policies "does not independently increase in value; the increase is from the accumulated interest and dividends paid by the insurance company." Because the cash surrender value of the BOLI policies did not increase separately from the reinvested interest and dividend payments, that value did not appreciate, and National City is not entitled to treat those payments as appreciation pursuant to R.C. 5733.056(B) and former R.C. 5733.05(A)(4) as it existed for the years in question.

## Conclusion

{¶ 20} The conclusion of the BTA that the full cash surrender value of National City's life-insurance policies—including any periodic increases in those values resulting from interest and dividend payments—should have been counted by the bank as part of its book value for corporate franchise-tax purposes during the tax years in question is both reasonable and lawful, and we therefore affirm that decision.

Decision affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

LANZINGER, J., dissents.

---

Vorys, Sater, Seymour & Pease, L.L.P., Raymond D. Anderson, and David A. Froling, for appellants.

Jim Petro, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.